# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**RONDA L. CHRISTIANSEN,**

    **Plaintiff,**

**-vs-**               **Case No. 6:10-cv-1630-Orl-28GJK**

**CITY OF ORLANDO, GLENN McCULLOUGH, LOUIS CORREA, DANIEL SCHAD, LEE FREEMAN, and ASHLEE WINDLER,**

    **Defendants.**

## ORDER

Ronda Christiansen ("Plaintiff"), pro se, filed this lawsuit pursuant to 42 U.S.C. § 1983, asserting violations of her constitutional rights by several Orlando police officers and others. The case is currently before the Court on the parties' summary judgment motions.[1] Having considered the parties' submissions, the Court concludes that Defendants' motions must be granted and that Plaintiff's motion must be denied.

### I. Background

In December 1987, Plaintiff purchased residential property located at 3815 Virginia

---

[1] The pertinent filings are: (1) the Motion for Summary Judgment (Doc. 38) filed by Defendants City of Orlando, Louis Correa, Daniel Schad, Lee Freeman, and Ashlee Windler and the Response (Doc. 43) filed by Plaintiff; (2) the Motion for Summary Judgment or Alternatively for Summary Adjudication (Doc. 40) filed by Plaintiff and the Response (Doc. 44) filed by Defendants City of Orlando, Louis Correa, Daniel Schad, Lee Freeman, and Ashlee Windler; and (3) the Motion for Summary Judgment (Doc. 51) filed by Defendant Glenn McCullough and the Response (Doc. 52) filed by Plaintiff.

Drive in Orlando, Florida ("the Property") (Pl. Dep., Doc. 38-6, at 9).[2]  In April 2002, the United States filed a lawsuit in this court, Case No. 6:02-cv-435, to reduce to judgment federal income tax liabilities against Plaintiff and to foreclose tax liens against the Property. (Doc. 1 in Case No. 6:02-cv-435).[3]  That suit ended with a stipulated judgment as to the amount Plaintiff owed the IRS as of February 2002.  (Doc. 61 in Case No. 6:02-cv-435, Ex. 1 to Pl. Dep.).

A second suit involving federal income tax liabilities was filed in this court against Plaintiff by the United States in March 2009, Case No. 6:09-cv-425.  In that case, in January 2010 the presiding judge granted summary judgment to the United States, foreclosed the tax liens, and entered an Order of Foreclosure and Sale directing that the Property be sold at public auction.  (Order of Foreclosure and Sale, Doc. 110 in Case No. 6:09-cv-425, Ex. 3 to Pl. Dep.).[4]  Plaintiff moved to stay execution of judgment while she appealed, but her

---

[2]Plaintiff's objections to the use of her deposition, (see Pl.'s Resp. Mem., Doc. 43, at 2, 7-8; Pl.'s Second Decl., Doc. 48) are rejected.  Plaintiff has not established any irregularity regarding the taking or use of the deposition, and Defendants have submitted the errata sheet for Plaintiff's deposition—signed by Plaintiff on April 3, 2012, (see Doc. 45).

[3]The Court may properly take judicial notice of filings in Plaintiff's prior cases.  See Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010) ("The district court properly took judicial notice of the documents in Horne's first case, which were public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'" (quoting Fed. R. Evid. 201(b))).  All of the cited filings in Case No. 6:02-cv-435 are in the record of the instant case as part of Exhibit A to the City Defendants' Motion for Summary Judgment (Doc. 38).  Some of these filings are also attached as exhibits to Plaintiff's deposition.

[4]All of the cited filings in Case No. 6:09-cv-425 are in the record of the instant case as part of Exhibit B to the City Defendants' Motion for Summary Judgment (Doc. 38).  Some of them are also attached as exhibits to Plaintiff's deposition.

requests were denied by the district court and the Eleventh Circuit Court of Appeals in March 2010. (Docs. 120 & 122 in Case No. 6:09-cv-425). On April 28, 2010, the Property was sold at auction to Nikki Nevill, and the sale was confirmed by the judge in Case No. 6:09-cv-425 on June 22, 2010. (Doc. 130 in Case No. 6:09-cv-425, Ex. 2 to Pl. Dep.; see also Pl. Dep. at 29). A deed dated June 25, 2010 reflecting the sale from the IRS to Nevill was recorded in the Orange County property records on August 16, 2010. (Doc. 38-4).

Meanwhile, Plaintiff had continued to reside at the Property until March 2010, when, in accordance with the terms of the Order of Foreclosure and Sale, U.S. Marshals removed her from the Property in advance of the public auction. (See Pl. Dep. at 38-39; see also Order of Foreclosure and Sale at 3-4 (directing all persons occupying the Property to permanently vacate the premises and deliver it up to the IRS and further providing that if any such person refuses to vacate the U.S. Marshal or his deputies could eject such person from the premises)). After the U.S. Marshals removed Plaintiff from the Property, they changed the locks. (Pl. Dep. at 40). However, sometime thereafter, Plaintiff returned to the Property, found the Property unlocked, and resumed living there; in July 2010, Plaintiff changed the locks on the Property.[5] (Id.).

On August 18, 2010, Defendant Glenn McCullough ("McCullough"), a real estate agent, contacted the Orlando Police Department regarding the Property. (See Second Am. Compl. ¶ 12; City Defendants' Am. Answer, Doc. 25, ¶ 12; McCullough Answer, Doc. 47, at

---

[5]It is unclear from Plaintiff's deposition when she resumed living in the home after being removed by the U.S. Marshals, but she testified that she changed the locks sometime in July 2010.

1-2). McCullough had been contacted by Nevill, who lived in Kansas City, regarding selling the Property; Nevill had learned that someone—possibly the previous owner—was trespassing in the house, and McCullough called the police at Nevill's request. Officer Louis Correa—also a Defendant in this case—was dispatched to the Property on August 18 and spoke to Plaintiff there, showing her a copy of the deed to Nevill. (Pl. Dep. at 19, 23). According to Plaintiff, Correa told her that if she was still on the Property on August 23, she would be arrested. (Second Am. Compl. ¶ 14; Pl. Dep. at 24).

Plaintiff was not arrested on August 18 or on August 23, and she remained at the Property. (Pl. Dep. at 24, 27). Approximately six weeks later, on September 29, 2010, Orlando police officer Ashlee Windler arrived at the Property with another officer, arrested Plaintiff for trespass, and transported Plaintiff to jail. (Id. at 31-33). The charge was later dropped. (Id. at 36).[6]

In this lawsuit,[7] Plaintiff brings four claims: Unreasonable Seizure of Property (Count I); Unreasonable Seizure of Person (Count II); Deprivation of Property Without Due Process (Count III); and Unreasonable Seizure of Person (Count IV). Counts I, II, and III arise from the events of August 18, 2010, and are brought against McCullough[8]; the City; Officer

---

[6]Sometime thereafter, Nevill conveyed the Property to her fiancé, Jerod Allen ("Allen"), and Allen successfully sued Plaintiff to quiet title to the Property. (Pl. Dep. at 37-38).

[7]Plaintiff initially filed suit in state court in late August 2010—after the August 18 encounter but prior to her September 29 arrest. Defendants removed the case to this Court in November 2010. (See Notice of Removal, Doc. 1, & Attachs. thereto).

[8]Plaintiff alleges that McCullough, a private citizen and real estate agent, "was acting under color of law in concert with the City and its employees" in connection with the events at issue. (Second Am. Compl. ¶ 9).

Correa; Officer Daniel Schad, who was at the scene sitting in a car; and Lee Freeman, an attorney for the City who allegedly directed the officers' actions and to whom Plaintiff spoke within a day or two of the incident. Count IV arises from Plaintiff's arrest on September 29, 2010, and is brought solely against Windler.[9] All parties have moved for summary judgment in their favor. (Docs. 38, 40, & 51).

## II. Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer

---

[9]Plaintiff also named a "John Doe" officer—the male officer who accompanied Windler to the Property on September 29—in this count, but Plaintiff has not identified any such officer even though discovery has closed, nor has she discussed that officer in her summary judgment filings.

v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1263 (D. Kan. 2003) (quoting Anderson, 477 U.S. at 251-52). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

"Cross motions for summary judgment do not change the standard." Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007). Such motions "'are to be treated separately; the denial of one does not require the grant of another.'" Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting Buell Cabinet Co. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979)). "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts." Id.

### III. Discussion

#### Counts I, II, and III

In Counts I, II, and III, Plaintiff alleges that on August 18, 2010, her property was unreasonably seized (Count I); that her person was unreasonably seized (Count II); and that she was deprived of property without due process (Count III). All of these claims fail, however, because neither Plaintiff's person nor her property was seized on that date, and she was not deprived of property; thus, no constitutional deprivation occurred on August 18, 2010.

Plaintiff's own deposition testimony reflects that there is no genuine issue of material fact as to whether she or the Property was seized on August 18, 2010 or whether she was

deprived of property on that date. Plaintiff testified that no one removed her from the Property or forced her to leave the Property on August 18, and indeed she remained on the Property until September 29, 2010. (Pl. Dep. at 27-28). Plaintiff contends that she was seized on that date even though she was not arrested and was instead warned of a potential future arrest; however, these facts do not support a finding of a seizure of person or property—unconstitutional or otherwise—or a finding of a deprivation of property with or without due process.[10] Accordingly, the summary judgment motions of the Defendants against whom Counts I, II, and III are brought—City of Orlando, Correa, Freeman, Schad, and McCullough—must be granted.

Count IV

In Count IV, Plaintiff alleges that on September 29, 2010, her person was unreasonably seized in violation of the Fourth Amendment when Windler arrested her for trespass. However, this claim also fails, and Windler's motion for summary judgment shall be granted.

---

[10]The lack of a constitutional violation disposes of the immunity arguments raised by Defendants Correa, Schad, and Freeman in their summary judgment filings; a constitutional violation would be necessary for Plaintiff to overcome the asserted immunity. Additionally, Plaintiff's assertion that Defendant McCullough can be considered a "state actor" is rejected; his call to the police and provision of a copy of his client's deed to the police do not constitute the requisite participation or joint action to render him potentially liable on a § 1983 claim. See, e.g., Lee v. Town of Estes Park, 820 F.2d 1112, 1115 (10th Cir. 1987) (declining to find joint action where "private party is simply reporting suspected criminal activity to state officials who then take whatever action they believe the facts warrant"); Sun v. Bluffton Police Dep't, Civil Action No. 9:09-2050-RBH-BM, 2010 WL 3786541, at *5 (D.S.C. July 21, 2010) ("[N]either of these two Defendants participated in any joint activity with the Bluffton Police Department; rather, they simply reported what they alleged was a violation of a state court order (whether they did so improperly or not), with all of the remaining conduct of which Plaintiff complains being taken by police officers. This is not state action.").

Defendants have presented evidence that a warrant was issued for Plaintiff's arrest on the day of that arrest. (See Arrest Warrant & Warrant Affidavit, Ex. E to Doc. 38). However, Plaintiff challenges whether the arrest warrant was issued prior to arrest, asserting that Windler did not have a warrant with her and that after Windler arrested her, Windler spent twenty minutes calling to find out about issuance of the warrant. (Pl. Dep. at 32-33). Regardless of when the warrant was issued–or whether a warrant was issued at all–Plaintiff has not presented evidence supporting a Fourth Amendment violation. Even analyzing the arrest as a warrantless arrest, Windler is entitled to summary judgment.

Plaintiff alleges in Count IV that Windler's actions violated her rights under the Fourth and Fourteenth Amendments "to be free from warrantless seizures." (Second Am. Compl. ¶ 35). The Fourth Amendment, made applicable via the Fourteenth Amendment, does not provide an absolute right "to be free from warrantless seizures." Instead, it provides a right to be free from unreasonable seizures and that warrants, if issued, must be based on probable cause. See U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ."). Thus, to the extent Plaintiff is basing her claim on an alleged per se constitutional "right to be free from warrantless seizures," Count IV fails.

Although warrantless arrests are sometimes impermissible, the warrantless arrest of Plaintiff has not been shown to be beyond the confines of the Fourth Amendment. The reasonableness of an arrest turns on probable cause. See Atwater v. City of Lago Vista, 532 U.S. 318, 353-54 (2001); see also Virginia v. Moore, 553 U.S. 164, 175 (2008). "Probable

cause to arrest exists when the facts and circumstances within the collective knowledge of law enforcement officers, or of which they have reasonably trustworthy information, would cause a prudent person to believe that the suspect has committed or is committing an offense." Craig v. Singletary, 127 F.3d 1030, 1042 (11th Cir. 1997). The record evidence shows that there was probable cause[11] to believe that Plaintiff had committed and was committing the offense for which she was arrested—trespass in a dwelling.[12] Windler's arrest of Plaintiff—even if warrantless—was based on probable cause and did not violate the Fourth Amendment.[13]

Plaintiff's assertions that she could not be arrested for trespass or "evicted" without a further court order are rejected. At the time of her arrest, Plaintiff was no longer the owner of the Property and had no legal right to be there. Her ownership interest was terminated in the 2009 lawsuit, in which the presiding judge foreclosed the IRS's lien on the Property,

---

[11]Moreover, only arguable probable cause—not actual probable cause—would be required for Windler to be entitled to the benefit of the defense of qualified immunity in this § 1983 case. See Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004).

[12]Plaintiff was arrested for violating section 810.08(1), Florida Statutes, which provides that "[w]hoever, without being authorized, licensed, or invited, willfully enters or remains in any structure or conveyance, or, having been authorized, licensed, or invited, is warned by the owner or lessee of the premises, or by a person authorized by the owner or lessee, to depart and refuses to do so, commits the offense of trespass in a structure or conveyance." This offense is a second-degree misdemeanor. See § 810.08(2)(a), Fla. Stat.

[13]As the Eleventh Circuit has noted, "the Supreme Court has never decided that the Fourth Amendment requires that a misdemeanor must always have occurred in an officer's presence for the officer to make a warrantless arrest." Eubanks v. Brook, 197 F. App'x 819, 821 (11th Cir. 2006) (citing Atwater); accord Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1258 (8th Cir. 2010). Even if there were such a requirement, it was satisfied here. Windler arrived at the Property and observed Plaintiff there before arresting her for trespass.

ordered that it be sold, and evicted Plaintiff from the Property. The Order of Foreclosure and Sale—of which Plaintiff clearly was aware—expressly ordered all occupants to permanently vacate the Property, and when Plaintiff did not do so she was removed from the Property in March 2010 by the U.S. Marshals in accordance with that Order. The fact that after being removed Plaintiff re-entered the Property, resumed living there, and changed the locks does not give her a constitutionally protected interest in the Property or a right not to be arrested for trespassing on it. Plaintiff did not have permission to be there, and she was a squatter on the Property, subject to being arrested for trespass. Cf. De Villar v. City of N.Y., 628 F. Supp. 80, 83 (S.D.N.Y. 1986) ("Plaintiffs were trespassers, squatters, and illegal occupants of the building. They had no constitutional property interest in the apartments they occupied. There was no legal bar to arresting them for criminal trespass if the City officials had decided to make a criminal complaint.").

In a similar vein, to the extent Plaintiff is challenging her warrantless arrest on the basis that it occurred in a home, she lacks standing to object to entry by the officers to effectuate her arrest.[14] Although the Fourth Amendment does afford "special protection to an individual in his home," Welsh v. Wisconsin, 466 U.S. 740, 754 (1984), trespassers, squatters, and others who occupy premises without consent of the owner of the property do not have a reasonable expectation of privacy in that property for Fourth Amendment

---

[14]With regard to the officers' entry into the home on September 29, Plaintiff testified in her deposition that the officers knocked on the door, that she opened the door, and that they asked to come in. (Pl. Dep. at 31). Plaintiff did not respond when asked if she allowed them to come in. (Id.). She did not remember if she invited them in, but they ended up in the house. (Id.). In a later-filed Declaration, Plaintiff states that she did not consent to Windler coming inside the house. (Pl. Decl., Attach. to Doc. 40, ¶ 5).

purposes; thus, such persons lack standing to object to entry onto such premises, and an otherwise constitutional arrest effected on that property does not violate the Fourth Amendment. See, e.g., Zimmerman v. Bishop Estate, 25 F.3d 784, 787-88 (9th Cir. 1993) (finding that warrantless arrest for trespass did not violate Fourth Amendment where arrestee had no reasonable expectation of privacy and the police had the consent of the owner to enter the property on which the arrestee was trespassing); accord United States v. Curlin, 638 F.3d 562, 565-66 (7th Cir. 2011) (noting that "individuals who occupy a piece of property unlawfully have no claim under the Fourth Amendment" and collecting cases); United States v. Battle, 637 F.3d 44, 49 (1st Cir. 2001) (noting that the defendant "may have exhibited a subjective expectation of privacy in [his girlfriend's] apartment, [but] that expectation was objectively unreasonable because [the defendant] did not have permission to be present," and thus "he no longer had a legally sufficient interest in the apartment to mount a Fourth Amendment challenge"); United States v. Murray, No. 1:10-cr-00024, 2010 WL 3069485, at *6 (D.V.I. Aug. 2, 2010) (collecting cases regarding squatters' lack of standing).

Here, the police had the consent of the owner of the Property—Nevill—whom Plaintiff acknowledges is the one who initiated the chain of events at issue by contacting McCullough and asking him to call the police about her presence on the Property. The officers lawfully entered the Property; they were not required to have a search warrant or an arrest warrant to arrest Plaintiff therein. See Sheik-Abdi v. McClellan, 37 F.3d 1240, 1243,1245 (7th Cir. 1994) (explaining that "[a]llegations of unlawful arrests in the home ordinarily call for separate determinations of the initial entry into the home and the subsequent arrest" and that

"[o]nce an officer has lawfully entered the premises . . . the Constitution does not require that he obtain a warrant before [e]ffecting an otherwise lawful arrest within").

In sum, while Plaintiff is understandably upset about losing her home of more than twenty years and ultimately being arrested at the Property, her ownership interest in the Property was terminated via the judicial process and she was ordered to leave the Property. Her constitutional rights were not violated by her arrest for later trespassing on that Property. Windler is thus entitled to summary judgment in her favor.

### IV.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. The Motion for Summary Judgment (Doc. 38) filed by Defendants City of Orlando, Louis Correa, Daniel Schad, Lee Freeman, and Ashlee Windler is **GRANTED**.

2.  The Motion for Summary Judgment or Alternatively for Summary Adjudication (Doc. 40) filed by Plaintiff is **DENIED**.

3.  The Motion for Summary Judgment (Doc. 51) filed by Defendant Glenn McCullough is **GRANTED**.

4.  The Amended Motion to Dismiss (Doc. 50) filed by Defendant Glenn McCullough is **DENIED as moot**.

5. The Clerk is directed to enter a judgment providing that Plaintiff takes nothing from any of the Defendants on any of her claims.  Thereafter, the Clerk shall close this case.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 24th day of July, 2012.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party